WitheRs, J.
delivered the opinion of the Court.
If there was no delivery of the corn in question, to the *392 plaintiff, the ease was within the statute of frauds; and we might not be able to find enough in the plaintiff’s proof to fulfil the demands of that statute. If the contract was exe-cutory, the plaintiff must fail, for he has brought trover, and such a contract is not the basis of such an action.
The true enquiry, therefore, is whether the order received by the plaintiff, from defendants, and by him, presented to the Rail Road Agent, was an execution of the contract — that is to say, did it operate to vest in Sahlman the right of property in the corn, and a constructive possession of it ?
It was contended at the bar, that 0. Mills & Co. had not possession themselves, and consequently they could not transfer it to another. But the testimony (by Mr. Pringle) is that the sale of 3000 bushels of corn, was made by Adger & Co. to defendants, “ at Hampton’s plantation.” Mills sent his bags to that plantation, and the corn was put into them. There is no room to question that defendants were complete and absolute owners of the corn, at Hampton’s plantation, and could deal, concerning it, as effectually as if the commodity had been in their warehouse in Charleston. Though Adger & Co. were to pay the freight, (yet, as the testimony is,) Mills & Co. were to receive the corn at the Rail Road, and have it from that place.
Conceding that the agent of the vendor, holding the goods, should recognize the order, which has not been discussed in this cause, it is conceived that he did so in fact; for the proof on that subject, shews that though it was not left with the Agent of the Rail Road when presented to him, that was omitted only because the com had not then arrived ; and we are informed that when it did arrive, information was given of the fact to the plaintiff, by one connected with the Rail Road depot; and it may, therefore, be well concluded that the warehouse-man fully recognized whatever right the paper presented conveyed to the plaintiff, and regarded the custody of the goods, when they should arrive, to be for and on account of the plaintiff in this case.
The real point of objection to the force and effect of the paper presented by the plaintiff, to the Rail Road Agent, as a delivery order, within the understanding of merchants, must be reduced to this — that the merchandize, intended to pass under it, was not identified ; or that something remained still to be done, in relation to the corn, necessary to designate precisely that which should be the plaintiff’s.
Assuredly the intention of the parties, if it can be collected from what they have said or done, as to this matter, ought to have much to do in determining our conclusion. It is not said in the order, nor otherwise proved, that any single act was to be done, tending to designate or identify the corn. It is suggested, however, that Mills & Co. by their contract *393 with Adger & Co. reserved the right to measure the corn at the Rail Road depot. But it is well enough to answer that this may not, on that account, have entered into the contract or intentions of the parties to this action. It appears in the case, as reported to us, that Mills & Co. were to receive a specific quantity of corn (3000 bushels,) at Hampton’s plantation, and Mills sent his own bags to receive it. It would seem that the capacity of each bag, purchased by plaintiff, was known, for in a conversation between plaintiff and.Mills, the former alleged that he had bought “ 625 bags of corn, containing 2\ bushels each, at 78 cents per bushel,” and this was not denied. Then if the number of bushels was a matter to be known at the Rail Road depot, that would seem to be no matter of doubt. However, the subject of sale was a specific number of bags of corn, (so specified in the order,) bags consigned to Mills &. Co. at the Rail Road depot, arrived or to arrive — if not there, then when they did come, or such of them as would complete the number, were to be delivered to the plaintiff. It is admitted that to make the order operative to sustain this action of trover, the plaintiff should be able, by virtue of its terms, to lay his hand on the specific bags purchased. What obstacle would he have found to doing this, if the defendants had not interfered? He would find bags of corn consigned to them ; and we hear of none other consigned to them, but those brought from Hampton’s plantation — the number was settled. But the defendants had other bags of corn, not distinguishable among themselves, at the same place, and from the same place. Still there is no difficulty in this, for, by the terms of the order, upon a plain interpretation, if none were there at its date, the first 625 that came were to be delivered — if some were there, but a less number, they, with the requisite additional number to arrive and when received, were to be the identical 625 bags, that were the subject of the contract. The element of the case, therefore, which includes the identity, and separate identity, of the thing sold, seems well enough developed by the plaintiff’s testimony.
2 Strobhart. 2 Esp. Rep. 598. 20 Pick. Rep. 280. 13 Pick. 182.
It is not proposed to collect authorities to sustain the observations hereinbefore made ; for as to the main question of enquiry here, (whether the order was such as to transfer the right of property in the corn, and the constructive possession to the plaintiff,) has recently undergone the consideration of this Court, and has been elaborately discussed in the case of Fraser & Co. v. Hilliard et al. Very good illustrations of what we hold in this case may be found in Searle v. Reeves, and in Riddle v. Varnum, citing the case of Macombee v. Parker. The two latter cases are a commentary upon the doctrine, that although a contract for the saLe of goods be complete and binding in other respects, the property in them *394 remains in the vendor, and at his risk, if any material acts rema¡n t0 be done before the delivery — unless the evidence constrain the belief that the parties.did not contemplate any thing else to >be done before delivery : and we are admonished by those cases to look, as in all other actions on contract, to the intention of the parties, as indicated by the proof. In the one case, though the plank and timber were in the hands of a bailee, when the contract was made, and had to be measured to ascertain the means of fixing the amount to be paid; and in the other, though the bricks were to be counted for the same purpose, yet the delivery was affirmed to have been made in each case. While the general principle is sensible, and ought to be maintained as wholesome law, it would be expedient, for the very purpose of maintaining it, that we should not push its application to a fanciful extent; and'in so doing lose sight of the reasonable indicia of the intention of the parties to regard the delivery complete, or not.
If, then, the delivery of the corn shall be considered as having followed the order, the question is ended; for'there is no room to debate whether the defendants had the right of stoppage in transitu. The delivery excludes that enquiry. Nor is there any thing in the suggestion, that we ascertain some fact or other as to the particulars of the contract, by parol, testimony. If actual delivery had been made, (and constructive is equivalent,) the whole contract might be proved by parol. So, under the statute of frauds, if a single bag had been delivered as a part of the article purchased, • the same would have followed.
Inasmuch as the defendants received a more favorable charge on the law than they had a right to require, and the plaintiff, notwithstanding, has obtained a verdict, he is of course entitled to retain it; and the motion in behalf of defendants is, therefore, dismissed.
O’Neall, J. — Evans, J. — Wardlaw, J. — and Frost, J. concurred.
Richardson, J. did not hear the argument in this case.

Motion refused.